**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NORMAN W. MEIDLING,**

    **Plaintiff,**

v.                                                                          Case No.  8:12-cv-2268-T-30TBM

**WALGREEN CO., d/b/a**
**WALGREENS, a foreign corporation,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 41), Plaintiff's Response in Opposition (Dkt. 63), and Defendant's Reply (Dkt. 76).  The Court, having reviewed the motion, response, reply, record evidence, and being otherwise advised of the premises, concludes that the motion should be granted in part and denied in part.[1]

## BACKGROUND

In this employment action, Plaintiff Norman W. Meidling, a former employee of Defendant Walgreen Co., d/b/a Walgreens ("Walgreens"), asserts the following claims: (1)

---

[1] The Court denies Plaintiff's request for summary judgment in his favor.  Plaintiff is not entitled to summary judgment based on the record, which is riddled with material disputed facts.  Moreover, Plaintiff's terse request, contained in his response, is procedurally deficient and otherwise without merit.  Plaintiff's argument that the EEOC final decision is direct evidence to be considered in denying Walgreens' motion and granting summary judgment in Plaintiff's failure is similarly without merit.

discrimination and retaliation under the Americans with Disabilities Act of 1990, Title 42, United States Code, Sections 12101-12203 ("ADA"); (2) discrimination under the Age Discrimination in Employment Act, Title 29, United States Code, Sections 621-634 ("ADEA"); (3) retaliation under the Family and Medical Leave Act, Title 29, United States Code, Section 2601-2654 ("FMLA"); (4) a claim of hostile work environment; and (5) a claim for unpaid wages under Florida law.[2]

Specifically, Meidling alleges that Walgreens failed to provide reasonable accommodations for his disability, subjected Meidling to a hostile work environment, denied Meidling the opportunity to participate in a management training program, disciplined Meidling, denied Meidling requested medical leave, and retaliated against Meidling for requesting reasonable accommodations and filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Meidling further claims that Walgreens failed to pay wages owed to Meidling.

Meidling began his employment at Walgreens on January 4, 2010, as a management trainee ("MGT"). As an MGT, Meidling was responsible for supervising subordinate employees, as well as performing other managerial and operational tasks at Walgreens' retail stores.

Prior to his employment, Meidling was diagnosed with psoriatic arthritis. Meidling was prescribed two chemotherapy drugs. The drugs caused sweating, nausea, exhaustion,

---

[2] The Court previously dismissed Meidling's privacy claim, intentional infliction of emotional distress claim, and any purported claim under Title VII with prejudice (Dkt. 9).

and weakness. Once a month, Meidling received an infusion of intravenous Remicade that greatly increased Meidling's symptoms.

During his employment, Meidling presented doctor's notes to Walgreens related to the request that he not work in the cooler or freezer based on the impact the cold had on his health. Meidling's doctor also requested that Meidling not work the weekend after he received his once per month drug therapy, i.e., the Remicade infusion, based on the increase in Meidling's symptoms.

According to Meidling, Walgreens did not always accommodate him during his employment. Meidling was forced to work in the cooler/freezer and Meidling was scheduled to work on weekends after he received his once per month drug therapy. The record is heavily disputed on this issue.

On December 20, 2011, Meidling filed a charge of discrimination with the EEOC for retaliation and discrimination based on his age and disability. At that time, Meidling's manager was Steve Smith. According to Meidling, Smith was aware of the EEOC complaint and set out to get Meidling terminated.

Smith terminated Meidling on January 5, 2012. According to Walgreens, Meidling was terminated because Meidling was not wearing a shirt and tie while working the weekend of December 31, 2011. Smith discovered this violation after he reviewed surveillance video. Meidling was also terminated because Meidling failed to inform Smith about another employee's purported fraud regarding Walgreens' coupons.

According to Meidling, Smith previously permitted Meidling to not always wear a shirt and tie because Meidling would sweat profusely after receiving his "chemo" drugs.

According to Meidling, an employee complained to him that another employee was using Walgreens' coupons in violation of the coupon policy. Meidling conducted his own investigation and called Ross Alexander, an employee in the loss prevention department. Alexander told Meidling to hold on to the coupons. Meidling was not scheduled to work the next day, so he put the coupons in his locker. On January 5, 2012, Smith terminated Meidling for Meidling's failure to inform Smith of the incident and for holding on to the coupons. Meidling contends that he was terminated as retaliation for filing the EEOC complaint.

Walgreens moves for summary judgment on all of Meidling's claims. As discussed below, the motion is granted in part, to the extent that the Court concludes that Walgreens is entitled to summary judgment on Meidling's ADEA, FMLA, and hostile work environment claims. The Court also grants the motion to the extent that it concludes that Meidling failed to exhaust his administrative remedies under the ADA with respect to any incident that occurred prior to February 23, 2011. The motion is otherwise denied.[3]

Notably, Walgreens' reply argues that the Court should largely disregard Meidling's declaration, filed in support of his response, because the declaration contradicts Meidling's deposition testimony. The Court will discuss this argument first.

---

[3] In light of the numerous disputed material facts, the Court will discuss the relevant facts in more detail under the Court's discussion of the specific claims below.

## SHAM AFFIDAVIT STANDARD

Although summary judgment may be granted only if the record reflects that no genuine issue of material fact exists, (*see Tippens v. Celotex Corp.,* 805 F.2d 949, 952 (11th Cir. 1986) and Fed. R. Civ. P. 56), parties may attempt to escape summary judgment by using affidavits to create issues of fact where none exist. Under such circumstances, a court may disregard an affidavit as a "sham" if the affidavit *flatly contradicts* earlier deposition testimony in a manner that cannot be explained. *See Van T. Junkins and Assoc. v. U.S. Indus.,* 736 F.2d 656, 657 (11th Cir. 1984). Under this approach, "[w]hen a party has given clear answers to *unambiguous* questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* (emphasis added).

Thus, an affidavit is properly considered a sham if "the affiant (1) makes a conclusory, unexplained assertion regarding a material fact which (2) directly contradicts that person's unequivocal deposition testimony." *Tippens v. Celotex Corp.*, 815 F.2d 66, 68 (11th Cir. 1987) (Hill, J., dissenting). Even so, the Court should disregard affidavits in limited circumstances: "[e]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Tippens,* 805 F.2d at 954 (internal quotation marks omitted). Care must be taken to distinguish "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 953. "In light of the jury's role in resolving questions of

credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition." *Id.*

The Court reviewed Meidling's entire deposition testimony in detail. The Court concludes that Meidling's declaration is not a sham. Notably, Walgreens does not move to strike any specific portion of Meidling's declaration. And Walgreens' reply is more akin to venting about the declaration as a whole, rather than asserting legal argument as to a specific portion of the declaration that should be stricken. Although there are certainly discrepancies contained in the declaration, the discrepancies are relevant to Meidling's credibility and should not be stricken. Walgreens' remaining arguments about Meidling's declaration are without merit at the summary judgment stage.[4]

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action

---

[4] Walgreens' reply also argues that the Court should disregard the declaration of Christine Nichols because she was never disclosed as a potential witness during discovery. This request is moot - the Court did not rely on Nichols' declaration in the instant Order.

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**[5]

**I.    Meidling's ADA Claims**

    **A.    Walgreens' argument that Meidling failed to exhaust his remedies.**

Under the ADA, a plaintiff is required to file a charge of discrimination within 300 days of the alleged action. *See Maynard v. Pneumatic Products Corp.*, 256 F.3d 1259, 1262-63 (11th Cir. 2001). The record reflects that Meidling filed his charge of discrimination on December 20, 2011 (Dkt. 1, Ex. 7). Thus, Meidling has exhausted his administrative remedies only with respect to actions taken on or after February 23, 2011, i.e., 300 days from the filing of the charge.

Meidling's response on this issue states in a conclusory fashion that the unlawful action is "continuing"; therefore, the Court may consider acts that occurred prior to the 300 days. The Court disagrees. In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 (2002), the Supreme Court considered whether, and under what circumstances, a Title VII plaintiff may file suit on events that fall outside the statutory time period. The Court held that "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* at 105. Further, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges . . . each discrete act starts a new clock for filing charges alleging that act . . ." *Id.* at 102.

---

[5] In light of the breadth of Walgreens' 35-page motion and the confusing nature of the claims alleged in this case, the Court will address Walgreens' arguments in the order they appear in the motion.

The Court explained, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114.  By contrast, hostile environment claims "are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115.  "Such claims are based on the cumulative effect of individual acts." *Id.*  In those cases, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.  Notably, denial of a reasonable accommodation for a disability is also considered a discrete act of discrimination.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008) (affirming the district court's holding that failure to provide light work assignments constituted a discrete act); *see also Salser v. Clarke Cnty. School Dist.*, 2011 WL 56064, at *3 (M.D. Ga. Jan. 5, 2011) ("Each alleged denial of a reasonable accommodation is a discrete act 'that must be challenged as separate statutory discrimination and retaliation claims.'") (quoting *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008)).

The Court concludes that Meidling's ADA claims fall under the rule for discrete acts.  Meidling's response fails to establish the necessary continuity to establish a continuing violation.  Indeed, Walgreens' failures prior to February 23, 2011, consist of a number of discrete acts, such as, among other things, Walgreens' failure to provide reasonable

accommodations and Meidling's transfer to an unpopular store. Therefore, only those discriminatory acts that took place within 300 days of Meidling filing his charge of discrimination are actionable.[6]

### B. Walgreens' argument that Meidling's termination is the only adverse employment action.

Walgreens argues that Meidling's ADA claims attack as unlawful "every employment decision made by Defendant that made him unhappy." Walgreens argues that Meidling's termination is the only action that is tantamount to an "adverse employment action." In light of the Court's ruling that Meidling is barred from asserting acts that occurred prior to February 23, 2011, the Court agrees with respect to the ADA claims. This conclusion has no bearing on Meidling's retaliation claims related to the retaliation he experienced *after* he filed his December 2011 complaint with the EEOC, which will be discussed in more detail below.

### C. Walgreens' argument that Meidling is not a qualified individual under the ADA.

Discrimination under the ADA includes:

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity

---

[6] Of course, at trial, Meidling may introduce evidence related to events that occurred prior to February 23, 2011, to the extent that those events provide relevant background and overall context. Any objections regarding this evidence may be asserted at trial during the relevant time.

42 U.S.C. § 12112(b)(5)(A); *see also* 29 C.F.R. § 1630.9. To state a *prima facie* claim for failure to accommodate, a plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *See Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows him to perform the job's essential functions." *Id.* at 1255-56.

A qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The plaintiff, in other words, "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.,* 205 F.3d 1301, 1305 (11th Cir. 2000). "Thus, if [the plaintiff] is unable to perform an essential function of his ... job, even with an accommodation, he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.* (quotation omitted).

An accommodation is reasonable and required only if it enables the employee to perform an essential function of the job. *See Lucas,* 257 F.3d at 1255. An employee with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation. *See Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1367 (11th Cir. 2000).

Reasonable accommodations may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

Walgreens argues that Meidling's post-termination representations to the Social Security Administration ("SSA") that he was unable to perform the essential functions of his position as of January 5, 2012, the date of his termination from Walgreens, bars any claim in this case that he was a qualified individual. Under the record, the Court disagrees. The record reflects that Meidling was able to perform his job with the reasonable accommodations that he requested from Walgreens. Indeed, Meidling testified numerous times during his deposition that he was able to perform the essential functions of his job with those accommodations. The record also reflects that the accommodations were reasonable, i.e., they were not difficult or onerous from Walgreens' point of view.

With respect to Meidling's representations to the SSA, the record, interpreted in a light most favorable to Meidling, the non-movant, reflects that Meidling's health rapidly declined on and after his termination because he was not receiving adequate medical care and he was not being accommodated as he requested towards the end of his employment. Thus, Walgreens' estoppel argument does not apply under these facts because Meidling's inconsistent comments to the SSA are explained in the record. *See* Dkt. 42-8 at 32/58 (noting that Meidling's health deteriorated since he lost his job and insurance). Notably, "pursuit,

and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA." *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 797-98 (1999). Of course, Walgreens may cross-examine Meidling at trial on any inconsistencies or contradictions related to this issue.

### D. Walgreens' argument that Meidling cannot establish a failure to accommodate.[7]

Walgreens argues that Meidling cannot create any genuine issue of material fact with regard to his failure to accommodate claim under the ADA. The Court disagrees. The record reflects disputed evidence on this issue. The record reflects that Meidling's requests for the weekend off following his monthly chemo treatments were not always honored. The record also reflects that Meidling was still forced to work in the freezers and coolers. Both accommodations were supported by doctor's notes. Meidling also made verbal requests for these accommodations. These requests took place after February 23, 2011. The record also reflects evidence that these requests were reasonable.

In sum, the majority of Walgreens' arguments on this issue are without merit. Meidling testified during his deposition numerous times that the requested accommodations

---

[7] Walgreens also argues that Meidling's disparate treatment claims under the ADA must fail. It appears that Walgreens assumes Meidling is asserting such a claim. And Meidling appears confused as to the distinction between disparate treatment and a failure to accommodate. Nonetheless, the record and Meidling's response reflect that Meidling is asserting a failure to accommodate claim and retaliation claim under the ADA. Thus, there is no reason to address Walgreens' argument on any disparate treatment claims. Moreover, any such claim would fail as a matter of law. Meidling does not identify any comparators who were treated more favorably.

were not granted.  During his deposition, Walgreens attempted to corner Meidling into providing *exact* dates of when these failures occurred.  Walgreens is not entitled to summary judgment because Meidling could not remember specific dates.  And Walgreens' reliance on its schedules and records are disputed; Meidling presents evidence that these records do not identify the correct weekends, i.e., the weekends that occurred after his chemo treatment.  Simply put, the jury will have to decide which party is more credible on these issues.  Accordingly, Walgreens' motion is denied with respect to Meidling's failure to accommodate claim.

## II.     Meidling's ADEA Claim

Walgreens argues that Meidling cannot establish a *prima facie* case under the ADEA as a matter of law.  The ADEA makes it unlawful for an employer to discriminate against any employee "because of" that individual's age.  29 U.S.C. § 623(a).  "[A] plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs, Inc.,* 557 U.S. 167, 180 (2009).

The Court concludes that Meidling falls woefully short of demonstrating a genuine issue of fact for trial.  Meidling's response states in one small paragraph that in February 2011, Meidling was denied permission to attend a managerial program because of his "age" and "condition".  Meidling testified during his deposition that he was told not to apply for the position because of his condition.  Meidling applied for the position and was told by Michael Barns, a Walgreens' manager, and his "buddy" George: "I don't even know why

you applied in the first place.  You're old, but with your condition . . . they're not going to take you.  You're on chemo."  (Dkt. 43-1 at 509:5-10).  Meidling merely speculates that he did not get the position because of his age.  This is insufficient.  Meidling does not point to any evidence establishing that Barns and his "buddy" George had any decision-making authority with respect to the position.  He also does not establish that his age was the "but-for" cause of the purported adverse employment action.  Also, it is completely unclear what adverse employment action Meidling experienced; Meidling's terse response on this issue merely states that Meidling was offended by Barnes' language.  Meidling also does not identify a single younger comparator who was treated more favorably.

In sum, there is simply no evidence to establish a *prima facie* case under the ADEA.  Meidling relies solely on his own speculations in support of the claim.  This is insufficient.  Accordingly, Walgreens is entitled to summary judgment on Meidling's ADEA claim.[8]

### III.   Meidling's Retaliation Claim

The law provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]."  42 U.S.C. § 12203(a).  Walgreens argues that it is entitled to summary judgment on Meidling's retaliation claim based on unlawful retaliation Meidling experienced after he made requests for accommodations.  Meidling's response does not address a retaliation claim based on Meidling's accommodation requests.

---

[8] Notably, it appears that this claim may also be administratively barred because Meidling does not identify when in February 2011 he applied for the position.

Thus, the Court concludes that any such claim is waived. Nonetheless, the claim would fail on the merits. The Eleventh Circuit has held that a failure to accommodate a plaintiff cannot support a retaliation claim. *See Calvo v. Walgreens Corp.*, 340 Fed.Appx. 618, 626, 2009 WL 2435700, at *7 (11th Cir. 2009). Specifically:

> As we observed in *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1288 (11th Cir. 1997), discrimination on the basis of disability is different from retaliation on the basis of opposing unlawful practices or filing a charge against the employer. In Stewart, we refused to address the plaintiff's "retaliation" claims that were based on simple refusals to accommodate her. We stated that "[i]n our view, the acts Stewart describes relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim." *Id.* at 1288. *See also Lucas,* 257 F.3d at 1261 (rejecting a retaliation claim based on a failure to reasonably accommodate because it "merely reclothes Lucas' ADA discrimination claim"). In other words, the gist of Calvo's *discrimination* claim is that Walgreens refused to accommodate her because of her disability. Walgreens did not refuse to accommodate Calvo because she requested accommodation. *Cf. CBOCS West, Inc. v. Humphries,* --- U.S. ----, 128 S.Ct. 1951, 1964, 170 L.Ed.2d 864 (2008) (Thomas, J., dissenting) (observing that discrimination is based on status, while retaliation is based on action).

*Id.* (emphasis in original).

Walgreens assumes that Meidling is not alleging a retaliation claim based on the EEOC charge he filed prior to his termination. Walgreens is incorrect. Meidling's complaint alleges that he was terminated in retaliation for filing a charge of discrimination with the EEOC. The complaint attaches Meidling's amended EEOC charge of discrimination, which includes a claim of retaliation premised on his termination. And Meidling testified in his deposition that Steven Smith, Meidling's manager at the time of his termination and the individual who terminated Meidling, told Meidling, prior to his termination, that he received

Meidling's EEOC complaint and Meidling was "done". Dkt. 43-1 at 519-20. Smith also told Meidling that he was going to "document the hell out of [Meidling] and run [Meidling] out now." *Id.* at 520:3-4.

Meidling's EEOC complaint is dated December 20, 2011. As set forth above, Meidling presents evidence that his manager at the time, Smith, was aware of the EEOC complaint. Meidling was terminated on January 5, 2012. In light of the timing of the events, Smith's comments, the fact that Smith was the decision-maker, and Meidling's statements that he was permitted to not wear a tie and was told to hold on to the coupons, Meidling also presents sufficient evidence of pretext. Accordingly, Walgreens' motion is denied with respect to Meidling's retaliation claim.

## IV.     Meidling's Hostile Work Environment Claim

Walgreens argues that Meidling cannot create any genuine issue of material fact with regard to his hostile work environment claim. The Court agrees. In a hostile work environment case, "the plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State Univ.,* 133 S.Ct. 2434, 2441 (2013) (citations omitted). A plaintiff establishing a violation of the ADA and/or the ADEA based on harassment must present evidence that "the workplace is permeated with ... discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *See Jones v. UPS Ground Freight,* 683 F.3d 1283, 1292

(11th Cir. 2012) (citations omitted); *see also Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).

Meidling does not come close to establishing a hostile or abusive work environment. Meidling stated during his deposition that using the "F" word was sufficient to establish a hostile work environment. This is insufficient. *See Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (noting profanity alone is not sufficient to state a hostile work environment claim). Meidling's additional complaints of bullying, profanity, and general crude demeanor are insufficient because this behavior was directed at everyone, including younger employees and non-disabled employees. Most of the other comments Meidling refers to are not based on any protective characteristic. And the sporadic comments of calling Meidling "chemo" guy/man, the guy with the "condition", and "old" are woefully insufficient to establish a hostile environment. *See Mendoza v. Borden*, 195 F.3d 1238, 1246-47 (11th Cir. 1999) (citing numerous examples where conduct failed to reach the high threshold of severity and pervasiveness).

Accordingly, Walgreens is entitled to summary judgment on Meidling's hostile work environment claim.

## V.     Meidling's FMLA Claim

As Walgreens points out, Meidling admitted during his deposition that he never made a request for leave under the FMLA. Accordingly, Walgreens is entitled to summary judgment on Meidling's FMLA claim.

### VI. Meidling's Unpaid Wages Claim

Walgreens argues that Meidling's unpaid wages claim under Florida law fails because he was paid for all of his time. Meidling disputes this. The Court cannot conclude, based on the record, whether Meidling is entitled to additional pay. Accordingly, Walgreens' motion is denied with respect to the unpaid wages claim.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Dkt. 41) is granted in part and denied in part for the reasons stated herein.

**DONE** and **ORDERED** in Tampa, Florida on June 13, 2014.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-2268.msj-employment-disability.wpd